**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL and GOBEIL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 26, 2018**

# In the Court of Appeals of Georgia

A18A0699. CITY OF ALBANY v. STANFORD et al.

BETHEL, Judge.

The City of Albany appeals the denial of its motion for judgment notwithstanding the verdict. The City argues that it should have been protected from suit by the doctrine of sovereign immunity. Alternatively, the City argues that the trial court should have granted its motion for judgment notwithstanding the verdict because longstanding precedent bars the plaintiffs' nuisance claim, crime is not a legal nuisance, and the City cannot be liable for discretionary nonfeasance. We agree that the City is protected from suit here by the doctrine of sovereign immunity and accordingly reverse the judgment of the trial court.

Sheryl Stanford and Wilfred Foster, individually and as co-administrators of LeSheldon Stanford's estate ("Plaintiffs"), allege that although the City of Albany

issued an occupational tax certificate to a business known as Brick City to operate as a recording studio and multi-purpose entertainment facility, the business was actually operating as a night club and was serving alcohol without a license. The police became aware of these facts and also learned of several fights that occurred at the location. There were also numerous incidents of drug use and sex involving minors occurring at the location. Because of these problems, the police reached out to the City's code enforcement division in an attempt to shut the business down. Police also raided the business, uncovering evidence of alcohol sales, weapons, and drugs.

Following this incident, the chief of the City's code enforcement division met with Brick City's owners (the Lovings) and advised them of the changes that were required for their business to operate in conformance with its license. However, following numerous complaints regarding the same problems at Brick City, police executed another search warrant, uncovering evidence of alcohol, drugs, and weapons once again. Daniel Loving was arrested for possession of marijuana, and a citation was issued for selling alcohol without a license. The City's code enforcement division then began preparing a recommendation for revocation of Brick City's licenses. However, no City commission hearing on the recommendation occurred, and the business continued to be re-licensed because the district attorney's office and/or

2

police department decided to further investigate possible criminal activity occurring at the business. Violent crime continued to occur there. Plaintiffs allege that as a result of the dangerous conditions at Brick City, of which the City was aware, LeSheldon Stanford was shot and killed by another individual outside the establishment.

Following the murder, Plaintiffs brought suit against the City of Albany and the Albany Board of City Commissioners[1] for nuisance, and Daniel and Molly Loving for various negligence claims. After trial, a jury returned a verdict for Plaintiffs, awarding them $15,200,000, and apportioning 70% of the fault for those damages to the City. The trial court entered judgment on the verdict against the City for $10,640,000, which represented 70% of the total verdict. The City filed a motion for judgment notwithstanding the verdict or for a new trial, which the trial court denied following a hearing. This appeal followed.

"On appeal from the denial of a motion for judgment notwithstanding the verdict, this court must determine whether, construing the evidence in a light most favorable to the party who obtained the jury verdict, there is any evidence to support

---

[1] The Albany Board of City Commissioners was voluntarily dismissed from the suit.

3

the jury's verdict." *Holland v. Holland*, 277 Ga. 792, 792 (596 SE2d 123) (2004). However, questions of law are reviewed de novo,[2] and a judgment based on an erroneous legal conclusion or theory will be reversed.[3]

1. The City first argues that it is entitled to sovereign immunity. After reviewing this argument de novo,[4] we agree.

"Sovereign immunity is not an affirmative defense, going to the merits of the case, but raises the issue of the trial court's subject matter jurisdiction to try the case[.]" *Ambati v. Bd. of Regents of Univ. Sys. of Ga.*, 313 Ga. App. 282, 282 n.3 (721 SE2d 148) (2011) (citation and punctuation omitted). "A court's lack of subject-matter jurisdiction cannot be waived and may be raised at any time either in the trial court, in a collateral attack on a judgment, or in an appeal." *Ga. Assn. of Professional Process Servers v. Jackson*, 302 Ga. 309, 312 (1) (806 SE2d 550) (2017) (citation and

---

[2] *See Schick v. Bd. of Regents of Univ. Sys. of Ga.*, 334 Ga. App. 425, 426 (779 SE2d 452) (2015).

[3] *See Ayers v. Yancey Bros. Co.*, 141 Ga. App. 358, 361 (2) (233 SE2d 471) (1977) (noting that a judgment "right for any reason must be affirmed," except where the judgment rests upon an erroneous legal theory, which is reversible error).

[4] *City of Greensboro v. Rowland*, 334 Ga. App. 148, 149 (1) (778 SE2d 409) (2015).

punctuation omitted). Here, the City raised the issue of sovereign immunity in its answer and on a motion to dismiss that was denied.

Further, sovereign immunity applies to municipalities, unless waived by the General Assembly or by the terms of the State Constitution itself. Ga. Const. of 1983, Art. IX, Sec. II, Par. IX. *See also* OCGA § 36-33-1; *Godfrey v. Ga. Interlocal Risk Mgmt. Agency*, 290 Ga. 211, 214 (719 SE2d 412) (2011); *Mayor and Aldermen of City of Savannah v. Herrera*, 343 Ga. App. 424, 427 (1) (808 SE2d 416) (2017).

> Waiver of a municipality's sovereign immunity in tort law is narrow, and only the General Assembly has the authority to enact a law that specifically provides for such a waiver. Any waiver of sovereign immunity is solely a matter of legislative grace. *There is no authority for a waiver of sovereign immunity beyond the legislative scheme.*

*Godfrey*, 290 Ga. at 214 (citations and punctuation omitted) (emphasis supplied). Thus, the Georgia Constitution confers sovereign immunity on municipalities, and any exception or waiver must be found in that same document or in a law passed by the General Assembly. *See Ga. Dep't of Nat. Resources v. Ctr. for a Sustainable Coast, Inc.*, 294 Ga. 593, 597 (2) (755 SE2d 184) (2014) (noting that the courts no longer have the authority to abrogate or modify the doctrine of sovereign immunity as they could when it was a product of the common law rather than constitutional

5

law). The plaintiffs, who seek to benefit from an alleged waiver of sovereign immunity, have the burden of proving such a waiver. *See Albertson v. City of Jesup*, 312 Ga. App. 246, 249 n.10 (1) (718 SE2d 4) (2011).

Plaintiffs first argue that the doctrine of sovereign immunity does not apply because cities have always been responsible for damages caused by nuisances maintained by the city that endanger life. In short, Plaintiffs argue that an "exception" to sovereign immunity exists for nuisance actions. However, there is no such "exception" applicable to the facts of this case.

In *City of Thomasville v. Shank*,[5] the Supreme Court of Georgia mentioned a "nuisance exception" to sovereign immunity. In that case, the Supreme Court of Georgia stated that a municipality may be liable for damages caused from the operation or maintenance of a nuisance, "irrespective of whether it is exercising a governmental or ministerial function[,]" because "a municipal corporation can not, under the guise of performing a governmental function, create a nuisance dangerous to life and health or take or damage private property for public purpose without just and adequate compensation being first paid." *Id.* at 624-625 (1) (citations omitted).

---

[5] 263 Ga. 624 (437 SE2d 306) (1993).

6

The Supreme Court of Georgia later clarified in *Georgia Department of Natural Resources v. Center for a Sustainable Coast, Inc.*,[6] that this language was "rooted in the concept that the government may not take or damage private property for public purposes without just and adequate compensation." *Id.* at 600. Thus, "the 'nuisance exception' recognized in *Shank* was not an exception at all, but instead, a proper recognition that the Constitution itself requires just compensation for takings and cannot, therefore, be understood to afford immunity in such cases." *Id. See also City of Greensboro v. Rowland*, 334 Ga. App. 148, 149-150 (1) (778 SE2d 409) (2015). *Accord City of Columbus v. Myszka*, 246 Ga. 571, 571-572 (1) (272 SE2d 302) (1980) (nuisance action permitted in a case involving water runoff onto private land); *Duffield v. DeKalb Cty.*, 242 Ga. 432, 433-434 (1) (249 SE2d 235) (1978) (suit permitted against county for nuisance and inverse condemnation where property was allegedly rendered unmarketable due to noise, odor, and pollution resulting from a plant).

But such an "exception" for cases triggering application of the eminent domain clause of the Constitution does not apply here in this case where the "damage" is

---

[6] 294 Ga. 593 (755 SE2d 184) (2014).

injury to a person or loss of life.[7] *See, e.g.*, *Davis v. Effingham Cty. Bd. of Comm'rs*, 328 Ga. App. 579, 583 (1) (a) (760 SE2d 9) (2014) (with respect to counties, sovereign immunity bars any personal injury or wrongful death action arising from nuisance or inverse condemnation); *Bd. of Comm'rs of Glynn Cty. v. Johnson*, 311 Ga. App. 867, 871 (1) (c) (717 SE2d 272) (2011) ("a personal injury for purposes of inverse condemnation does not constitute personal property that can be taken"); *Rutherford v. DeKalb Cty.*, 287 Ga. App. 366, 369 (2) (651 SE2d 771) (2007); *Howard v. Gourmet Concepts Int'l, Inc.*, 242 Ga. App. 521, 524 (3) (529 SE2d 406) (2000). Rather, as indicated above, Plaintiffs must be able to point to some statutory or constitutional provision waiving the City's sovereign immunity. *See* OCGA § 36-33-1; *Godfrey*, 290 Ga. at 214; *Herrera*, 343 Ga. App. at 427 (1).

To this end, Appellees next argue that the City waived its sovereign immunity under OCGA § 36-33-1 (b). We disagree.

OCGA § 36-33-1 (b) provides a narrow waiver of a municipal corporation's sovereign immunity "[f]or neglect to perform or for improper or unskillful

---

[7] We reject a reading of *Wright v. City of Cochran*, 253 Ga. App. 314 (558 SE2d 844) (2002) that suggests that the dicta therein may be read to support an inference that an exception to sovereign immunity, not anchored to any statutory or constitutional waiver, exists for nuisance actions resulting in personal injury.

8

performance of their ministerial duties[.]" "This provision has for more than a century been interpreted to mean that municipal corporations are immune from liability for acts taken in performance of a governmental function but may be liable for the negligent performance of their ministerial duties." *City of Atlanta v. Mitcham*, 296 Ga. 576, 577-578 (1) (769 SE2d 320) (2015) (citations omitted).

"A municipal corporation has a dual character, the one public and the other private, and exercises correspondingly two-fold functions, the one governmental and legislative, and the other private and ministerial." *Mayor and Council of Dalton v. Wilson*, 118 Ga. 100, 102 (44 SE 830) (1903) (citation omitted). A municipality is entitled to assert immunity when it "undertakes to perform for the state duties which the state itself might perform, but which have been delegated to the municipality[.]" *Mayor & Aldermen of City of Savannah v. Jordan*, 142 Ga. 409, 410 (83 SE 109) (1914); *see also City of Thomaston v. Bridges*, 264 Ga. 4, 8 (439 SE2d 906) (1994) (J. Carley, concurring specially). This "governmental function," which entitles a municipality to immunity from liability, can also be defined as those functions "of a purely public nature, intended for the benefit of the public at large, without pretense of private gain to the municipality." *City of East Point v. Young*, 340 Ga. App. 223, 224 (2) (797 SE2d 156) (2017) (citation omitted). In comparison, a ministerial

9

function, for which a municipality may be liable for its negligent performance, is defined as a function "involving the exercise of some private franchise, or some franchise conferred upon the municipality by law which it may exercise for the private profit or convenience of the municipality or for the convenience of its citizens alone, in which the general public has no interest." *Id.* (citation and punctuation omitted). Thus, we must examine whether abatement of the nuisance which arose in this case is a governmental or ministerial function.

In the case before us, we conclude that the City was exercising a governmental function when it opted not to revoke the occupational tax certificate of Brick City. "Activities that are undertaken primarily for public benefit rather than for revenue production are governmental functions" and the City is shielded from a nuisance claim by sovereign immunity.[8] *City of Atlanta v. Durham*, 324 Ga. App. 563, 565

---

[8] *See, e.g.*, *Mitcham*, 296 Ga. at 580 ("the operation of a jail and the care and treatment of individuals in police custody are purely governmental functions related to the governmental duty to ensure public safety and maintain order for the benefit of all citizens"); *Town of Fort Oglethorpe v. Phillips*, 224 Ga. 834, 835-836 (165 SE2d 141) (1968) (maintenance and operation of traffic light is a governmental function); *Gooden v. City of Atlanta*, 242 Ga. App. 786, 788 (531 SE2d 364) (2000) (operation of public recreational swimming facilities, primarily for public benefit rather than for revenue producing, is a governmental function, so that the city is shielded from negligence claims by doctrine of governmental immunity); *City of Atlanta v. Chambers*, 205 Ga. App. 834, 839 (424 SE2d 19) (1992) (trial court correctly granted summary judgment on negligent retention and negligent entrustment

10

(751 SE2d 172) (2013) (demolition of a house claimed to be a nuisance was a government function). *See also Mayor and Aldermen of City of Savannah v. Jones*, 149 Ga. 139, 139 (99 SE 294) (1919) (performance of a duty connected with the preservation of the public health is a governmental function). This Court has previously stated that "a municipality's issuance of a permit or license is a governmental function." *Calloway v. City of Warner Robins*, 336 Ga. App. 714, 715 (1) (a) (783 SE2d 175) (2016) (citation and punctuation omitted). *See also City of Thomson v. Davis*, 92 Ga. App. 216, 218-219 (1) (88 SE2d 300) (1955) (municipality's act of granting or revoking a business license constitutes a governmental function). While the issuance of an occupational tax certificate could

---

claims because garbage collection by the city is a governmental function); *Sinkfield v. Pike*, 201 Ga. App. 652, 653 (411 SE2d 889) (1991) (because the operation of a fire department is a governmental function, the city is immune from any liability). *Compare City of Atlanta v. Atlantic Realty Co.*, 205 Ga. App. 1, 3 (421 SE2d 113) (1992) ("A municipality's function of maintaining its streets and sidewalks in a safe condition has been held to be ministerial in nature"); *City of Tallapoosa v. Goebel*, 63 Ga. App. 1 (10 SE2d 201) (1940) (maintaining a waterworks qualified as a quasi-public business and was therefore a ministerial function); *City Council of Augusta v. Hudson*, 94 Ga. 135 (21 SE 289) (1894) (city liable in negligence where it operated a toll bridge for profit).

11

conceivably be viewed as ministerial,[9] the decision of when and whether to revoke an occupational tax certificate is a governmental function because it is the exercise of the city's police power, which is inherently discretionary. Thus, because Plaintiffs have not demonstrated that the criminal activity at Brick City was a nuisance maintained by the City resulting in damage to private property or that the act of issuing and/or failing to revoke an occupational tax certificate is a ministerial act for which the City's sovereign immunity has been waived by the General Assembly, the City is protected from suit. The trial court therefore erred by denying the City's motion for judgment notwithstanding the verdict.

2. Because of our ruling in Division 1, we need not address the City's other enumerations of error.

*Judgment reversed. Gobeil, J., concurs fully and specially. Ellington, P. J., dissents.**

**\* THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2 (a)**

---

[9] We expressly do not reach this question, however.

A18A0699. CITY OF ALBANY v. STANFORD, et al.

GOBEIL, Judge, concurring fully and specially.

I agree with Judge Bethel that the City is entitled to sovereign immunity for the claims asserted by the appellees, and I therefore concur fully in the majority opinion. I write separately, however, to clarify my reasons for finding that the nuisance claim at issue does not fall within any "municipality exception" to sovereign immunity.

Nuisances giving rise to tort liability consist of two types: private and public. A review of our case law makes clear that Georgia's appellate courts have applied a so-called "municipality exception" to sovereign immunity only as to those claims arising out of a private nuisance.

Although sounding in tort, a private nuisance claim is generally viewed as a remedy for the interference with an owner's or occupier's interest in real property.[1] See Restatement (Second) of Torts, §821D (1979) ("[a] private nuisance is a non-trespassory invasion of another's interest in the private use and enjoyment of land"). See also Prosser & Keeton, The Law of Torts, "Nuisance," § 87; *Barrow v. Georgia Lightweight Aggregate Co.*, 103 Ga. App. 704, 711 (4) (120 SE2d 636) (1961) ("[t]he classic definition of a private nuisance is such conduct as constitutes an unreasonable interference with the plaintiff's interest in the use and enjoyment of his land"), disapproved on other grounds, *OB-GYN Associates of Albany v. Littleton*, 259 Ga. 663, 667 (B) (386 SE2d 146) (1989).

Given that private nuisance law addresses interference with property rights, and given the constitutional prohibition on unreasonable government interference with

---

[1] Georgia law defines a nuisance generally as "anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of . . . shall be such as would affect an ordinary, reasonable man." OCGA § 41-1-1. Georgia law further defines a "private nuisance" as "one limited in its injurious effects to one or a few individuals."OCGA § 41-1-2. More than 100 years ago, the Supreme Court of Georgia held that this statutory definition, which has remained virtually unchanged since 1863, was "not intended to change the common-law definition of a nuisance." *Hill v. McBurney Oil & Fertilizer Co.*, 112 Ga. 788, 793 (3) (38 S.E. 42) (1901).

those rights, Georgia's appellate courts have recognized that a municipality is not entitled to assert sovereign immunity in defending against a private nuisance claim. See *City of Thomasville v. Shank*, 263 Ga. 624, 625 (1) (437 SE2d 306) (1993) (reaffirming "the long-standing principle that a municipality is liable for creating or maintaining a nuisance which constitutes either a danger to life and health or taking of property" and holding that a municipality may be held liable for the negligent maintenance of a sewer system which resulted in the homeowner's property being flooded with raw sewage); *Hibbs v. City of Riverdale*, 267 Ga. 337, 338 (478 SE2d 121) (1996) (city could be held liable to landowner for the creation and maintenance of a nuisance where the city's negligent maintenance of its sewer system caused repeated flooding of the property); *City of Atlanta v. Demita*, 329 Ga. App. 33, 34 (1) (762 SE2d 436) (2014) (even in the absence of a waiver of sovereign immunity, "a municipality may be liable for maintaining a continuing, abatable nuisance . . . which causes the repeated flooding of [another's] property"); *City of Columbus v. Barngrover*, 250 Ga. App. 589, 592 (1) (a) (552 SE2d 536) (2001) (same); *Hammond v. City of Warner Robins*, 224 Ga. App. 684, 691 (1) (482 SE2d 422) (1997) (municipality may be held liable for a private nuisance which damages the real property of another).

3

Notably, however, I am aware of no case in which Georgia's appellate courts have found a municipality liable for a private nuisance where the alleged nuisance resulted in personal injury to a member of the public, as opposed to the owner or occupier of the property. Cf. *Hammond*, 224 Ga. App. at 689 (1) (where nuisance causes only de minimis damage to a property interest, an owner or occupier of land may recover damages for "annoyance and discomfort" resulting from the maintenance of the nuisance). Although not articulated specifically, it appears that appellees are attempting to assert a public nuisance claim, which is traditionally recognized as an unreasonable interference "with a right common to the general public."[2] Restatement (Second) of Torts, § 821B (1979). But we have been shown no cases finding that the municipality exception to sovereign immunity applies to a claim for a public nuisance. Further, given the rationale for the municipality exception – that the government may not unreasonably interfere with private property rights – I see no

---

[2] Georgia defines a "public nuisance" as "one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." OCGA § 41-1-2. Examples of a public nuisance would include interference with the public right of passage on the highway or on navigable waters, interference with use of a public place, or interference with the public health, safety, or peace. Restatement (Second) of Torts §821B, Comment (a).

4

basis for extending the exception to include claims arising from a private nuisance.[3]

See *Georgia Dep't of Natural Resources v. Center for a Sustainable Coast*, 294 Ga. 593, 600 (2) (755 SE2d 184) (2014).

In light of the foregoing, I agree with Judge Bethel that the City of Albany is entitled to sovereign immunity for the nuisance claim asserted in this case.

---

[3] Moreover, to the extent cases have indicated that a municipality could be held liable for a public nuisance, such cases have involved nuisances situated on property owned or controlled by a city. See *Spooner v. City of Camilla*, 256 Ga. App. 179, 183 (2) (b) (568 SE2d 109) (2002) (plaintiff contended that city had maintained a nuisance (a mining pit filled with water on a city-owned property)); *City of Vidalia v. Brown*, 237 Ga. App. 831, 835 (2) (516 SE2d 851) (1999) (plaintiff claimed city had maintained a nuisance within the city-owned right-of-way). There is no case law indicating that a municipality may be held liable for creating or maintaining a nuisance on private property held by another.

A18A0699. CITY OF ALBANY v. STANFORD et al.

ELLINGTON, Presiding Judge.

I respectfully dissent.

Under Georgia law,

While a municipality enjoys sovereign immunity from liability for negligent acts done in the exercise of a governmental function, it may be liable for damages it causes to a third party from the creation or maintenance of a nuisance.

(Citation omitted.) *Hibbs v. City of Riverdale*, 267 Ga. 337 (478 SE2d 121) (1996).[1]

As the Supreme Court of Georgia explained, "[t]his exception to sovereign immunity is based on the principle that a municipal corporation can not, under the guise of performing a governmental function, create a nuisance dangerous to life and health or take or damage private property for public purpose, without just and adequate compensation being first paid." (Citation and punctuation omitted.) *City of Thomasville v. Shank*, 263 Ga. 624, 624-625 (1) (437 SE2d 306) (1993). In *Shank*, the Supreme Court

> reaffirm[ed] the long-standing principle that a municipality is liable for creating or maintaining a nuisance which constitutes either a danger to life and health or a taking of property. This holding is not in conflict with the 1990 amendment [to Ga. Const. of 1983, Art. I, Sec. II, Para. IX, which eliminated the insurance waiver provision and substituted in

---

[1] The guidelines for determining "whether a municipality will be liable for creating or maintaining a nuisance" are:

the defect or degree of misfeasance must exceed mere negligence (as distinguished from a single act); the act complained of must be of some duration and the maintenance of the act or defect must be continuous or regularly repetitious; and there must be a failure of municipal action within a reasonable time after knowledge of the defect or dangerous condition.

(Citation and footnote omitted.) *Hibbs*, 267 Ga. at 338.

2

its stead a Tort Claims Act waiver,[2]] as that amendment deals with the concept of waiver, and in the case of nuisance we are dealing not with a waiver of but an exception to sovereign immunity.

Id. at 625 (1).

I agree with the majority conclusion that cases like *Ga. Dept. of Natural Resources v. Center for a Sustainable Coast, Inc.*[3] – which address the second scenario (the nuisance at issue takes or damages private property for public purpose) and hold that a municipality's maintenance of a "nuisance" may amount to a taking for which just and adequate compensation is due – do not apply in this case. But the first scenario (the nuisance at issue is dangerous to life and health) does apply[4]; the

---

[2] See Ga. L. 1990, p. 2435 (Act No. 87, § 1).

[3] *Ga. Dept. of Natural Resources v. Center for a Sustainable Coast, Inc.*, 294 Ga. 593 (755 SE2d 184) (2014).

[4] See *City of Atlanta v. Leake*, 243 Ga. 20, 20-21 (252 SE2d 450) (1979) (In a case where the plaintiffs alleged that the city maintained a nuisance in the form of a clogged sewer and sought damages for personal injury, the trial court correctly ruled that the city was entitled to summary judgment on the merits. Whether the city was entitled to sovereign immunity was not discussed.); *Mayor & City of Savannah v. Palmerio*, 242 Ga. 419, 426 (3) (h) (249 SE2d 224) (1978) (In a case where the plaintiffs alleged that the city maintained a nuisance by failing to post proper signals for a reversible lane of traffic, resulting in a hazard, and sought damages for personal injury, the plaintiffs' claims were submitted to the jury. The Court approved the following jury instruction: "While it is true that a municipal corporation is not liable for its acts of negligence in discharging a governmental function, yet a municipal

3

majority's opinion applies an inapplicable line of precedent and thereby writes this longstanding and important exception to the protection of sovereign immunity out of Georgia law. I therefore dissent.

corporation cannot, under the guise of performing a governmental function, create a nuisance dangerous to life or health.") (citations omitted); *Mayor & Aldermen of Savannah v. Herrera*, 343 Ga. App. 424, 427-432 (1) (808 SE2d 416) (2017) (In a case where the plaintiff alleged that the city maintained a nuisance in the form of a tree in a city right-of-way that was obstructing the view of motorists traveling through the adjacent intersection and sought damages for personal injury, the evidence presented issues of fact regarding whether the city had actual or constructive notice that the tree was obstructing motorists' view, and that question of fact precluded summary judgment on the issue whether the city breached a ministerial duty under OCGA § 32-4-93 to repair known defects in a public road for which sovereign immunity did not apply.), cert. granted (May 21, 2018); *Gooden v. City of Atlanta*, 242 Ga. App. 786, 788 (531 SE2d 364) (2000) (In a case where the plaintiffs alleged that the city maintained a nuisance in the form of an unsecured swimming pool and asserted a claim for wrongful death, the appellate court noted that a city may be liable for damages it causes to a third party from the creation or maintenance of a nuisance and affirmed the trial court's grant of summary judgment in favor of the city on the merits, based on a determination that the evidence showed, at most, a single act of negligence.); *City of Fairburn v. Cook*, 188 Ga. App. 58, 64-65 (6) (372 SE2d 245) (1988) (In a case where the plaintiff sought damages for personal injuries sustained, alleging the city maintained a nuisance in the form of a dangerous intersection, the plaintiff's claims were properly submitted to the jury. Whether the city was entitled to sovereign immunity was not discussed.); *Rea v. Bunce*, 179 Ga. App. 628, 630-631 (1) (b) (347 SE2d 676) (1986) (In a case where the plaintiffs alleged that the city maintained a nuisance in the form of smoke emanating from a sewer line and sought damages for personal injury, the trial court correctly ruled that the city was entitled to summary judgment on the merits. Whether the city was entitled to sovereign immunity was discussed only in the context of the plaintiffs' negligence claims, not in the context of the nuisance claim.), overruled on other grounds by *Martin v. Ga. Dept. of Public Safety*, 257 Ga. 300 (357 SE2d 569) (1987).

4